Michael A. Lopez, ISB# 8356
David J. Cummings, ISB# 5400
Nez Perce Tribe
Office of Legal Counsel
P.O. Box 305
Lapwai, ID 83540
(208) 843-7355
(208) 843-7377 (fax)
mikel@nezperce.org
djc@nezperce.org

*Attorneys for Plaintiff Nez Perce Tribe*

Bryan Hurlbutt, ISB# 8501
Advocates for the West
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
bhurlbutt@advocateswest.org

Natalie J. Havlina, ISB# 7498
Law Office of Natalie J. Havlina
P.O. Box 1675
Boise, ID 83701
(208) 473-1277
havlinalaw@gmail.com

*Attorneys for Plaintiff Idaho Rivers United*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEZ PERCE TRIBE and IDAHO RIVERS UNITED, | Case # _____ |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | **Violations of the Administrative Procedure Act (5 U.S.C. § 551 *et seq.*), Wild and Scenic Rivers Act (16 U.S.C. §§ 1271-1287; National Forest Management Act (16 U.S.C. § 1600 *et seq.*), and Declaratory Judgment Act (28 U.S.C. §§2201 *et seq.*)** |
| UNITED STATES FOREST SERVICE, | |
| Defendant. | |

1.      Plaintiffs Nez Perce Tribe (Tribe) and Idaho Rivers United (IRU) bring this action for emergency injunctive relief to prevent irreparable harm to the rights and interests of the Nez Perce people, IRU, and the outstandingly remarkable values of the Middle Fork Clearwater/Lochsa Wild and Scenic River Corridor.

2.      This action follows in the footsteps of *Idaho Rivers United v. U.S. Forest Service*, Civ. No. 11-0095-BLW (D.Idaho), 2013 WL 474851 (Feb 7, 2013), wherein this Court held that the U.S. Forest Service has broad delegated authority to regulate the transport of "mega-loads" on U.S. Highway 12 where it passes through the Nez Perce-Clearwater National Forest and the Middle Fork Clearwater/Lochsa Wild and Scenic River corridor.

3.      Based on the *Idaho Rivers United* ruling, the Forest Service issued interim directives defining what a "mega-load" is and prohibiting the transport of any further mega-loads until the Forest Service completes a necessary corridor impacts study and consultation with the Nez Perce Tribe.

4.      The Idaho Transportation Department ignored the Forest Service's directives on August 2, 2013, when it issued a permit authorizing Omega Morgan to transport a mega-load on U.S. Highway 12, beginning Monday, August 5.  The mega-load is now parked in the town of Syringa, which is inside the Nez Perce-Clearwater National Forest and the Wild and Scenic River corridor.  A second mega-load is now (August 8, 2013) located at the Port of Wilma.

5.      Yet, the Forest Service is once again denying the Tribe's and public's requests for relief on the grounds that the agency "lacks authority."  Though this Court's decision in *Idaho Rivers United* has forced the Forest Service to admit that it has jurisdictional authority to "review" mega-load permits, and though the agency has taken a step toward exercising this authority by issuing interim criteria, the Forest Service has now decided it lacks the authority to

enforce those interim criteria and its exercise of jurisdiction over transportation within the National Forest and Wild and Scenic River corridor.

6.     By denying its authority to enforce its own directives and jurisdiction to regulate the transportation of mega-loads on U.S. Highway 12, the Forest Service is yet again "standing down," just as it did in *Idaho Rivers United*, and is allowing Omega Morgan to proceed unauthorized and uncontested with its mega-load through the Wild and Scenic River corridor and National Forest.  The agency's arbitrary conduct irreparably and substantially harms the Tribe because the Tribe was and continues to be deprived of the opportunity to consult with its federal trustee concerning the mega-load's impacts to its rights and interests in the Nez Perce-Clearwater National Forest.  Specifically under NFMA and its implementing regulations, as reflected in the Clearwater Forest Plan, the agency must ensure that its actions are not detrimental to the protection and preservation of the Tribe's religious and cultural sites and practices and access to treaty-reserved rights in the National Forest.  This requirement, in conjunction with the Forest Service's responsibilities under Executive Order 13175 and Department of Agriculture policies on coordination consultation with Indian tribes, does not permit the agency to waive its consultation responsibilities when it is inconvenient or politically challenging to effectuate them.

7.     The Forest Service's decision that it lacks the authority to enforce its jurisdictional authority over Highway 12 in the National Forest irreparably and substantially harms IRU, its members, and its staff by degrading the outstandingly remarkable scenic and recreational values of the Middle Fork Clearwater/Lochsa Wild and Scenic River.

8.     Plaintiffs Nez Perce Tribe and IRU accordingly seek immediate judicial review, as well as declaratory and injunctive relief, from this Court to prohibit unauthorized passage of

Omega Morgan's mega-loads across National Forest lands, and to prevent the irreparable injuries to Plaintiffs and their members that would result from this intrusion.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; the National Forest Management Act (NFMA) 16 U.S.C. § 1600 *et seq.*; and the Wild and Scenic Rivers Act (WSRA), 16 U.S.C. §§ 1271–1287.  An actual, justiciable controversy now exists between Plaintiffs and Defendant, and the requested relief is therefore proper under 28 U.S.C. §§ 2201–02 and 5 U.S.C. §§ 701–06.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occur within this judicial district, Plaintiffs reside in this district, and the public lands and resources in question are located within this district.

11.      The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## PARTIES

12.      Plaintiff NEZ PERCE TRIBE is a federally recognized Indian tribe headquartered in Lapwai on the Nez Perce Reservation.  Since time immemorial, the Tribe and its tribal members have used and enjoyed the lands and waters of the Clearwater Basin, including those areas now encompassing the Nez Perce-Clearwater National Forest and Middle Fork Clearwater/Lochsa Wild and Scenic River.

13.     In 1855, the Tribe negotiated a treaty with the United States.  Treaty of June 9, 1855, with the Nez Perce Tribe, 12 Stat. 957 (1859) (1855 Treaty).  Article 3 of the 1855 Treaty explicitly reserved to the Tribe certain rights, including the exclusive right to take fish in streams running through or bordering the Reservation, and "the right to fish at all usual and accustomed places in common with citizens of the Territory; and of erecting temporary buildings for curing, together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed lands."

14.     The Tribe has a significant interest in the Forest Service's administration and regulation of the Nez Perce-Clearwater National Forest.  When not prevented from doing so by the transport of mega-loads on U.S. Highway 12, the Tribe and its members derive subsistence, ceremonial, recreational, aesthetic, scientific, commercial, cultural, and spiritual benefits from the land and resources of the Nez Perce-Clearwater National Forest that comprises part of the Tribe's vast aboriginal territory and on which the Tribe enjoys access to, and exercise of, treaty-reserved rights.   The past, present, and future enjoyment of these benefits by the Tribe and its members has been, is being, and will continue to be irreparably harmed by the Forest Service's disregard of its statutory duties—specifically the Forest Service's decision that it lacks the authority to enforce its own jurisdiction authority over U.S. Highway 12 within the National Forest and its own directives disallowing mega-loads on U.S. Highway 12 without a corridor impacts study and tribal consultation. These are actual, concrete injuries caused by Defendant's violations of law, for which judicial relief is required to remedy the harm caused to the Tribe.

15.     Plaintiff IDAHO RIVERS UNITED is a regional, membership, not-for-profit conservation organization representing all who love the freedom, adventure, and solitude of Idaho's rivers.  IRU's mission is to protect and restore the rivers of Idaho, and it has become a

powerful force for safeguarding Idaho's imperiled wild steelhead and salmon, including protecting and enhancing stream flows and riparian areas, and defending and promoting the wild and scenic qualities of Idaho's great wild rivers.

16.     Many of IRU's members and staff work, live, study, and/or recreate in the Nez Perce-Clearwater National Forest and the surrounding region, including in the Middle Fork Clearwater/Lochsa Wild and Scenic River area.  Plaintiff's members and staff derive aesthetic, recreational, scientific, inspirational, educational, economic, and other benefits from the Middle Fork Clearwater and Lochsa Wild and Scenic Rivers and the surrounding National Forest on a regular and continuing basis and intend to do so frequently in the immediate future.

17.     Defendant's violations of law as alleged herein irreparably harm the aesthetic, commercial, conservation, scientific, recreational, educational, economic, and other interests of IRU's staff, board of directors, and members.  These are actual, concrete injuries caused by Defendant's violations of law, for which judicial relief is required to remedy the harm caused to IRU.

18.     Defendant U.S. FOREST SERVICE is an agency or instrumentality of the United States, within the Department of the Agriculture.  The Forest Service is vested by law with the authority and duties to manage and protect the public lands and resources of the Nez Perce-Clearwater National Forest and the Clearwater/Lochsa Wild and Scenic River corridor at issue in this litigation.

## LEGAL FRAMEWORK

### The Administrative Procedure Act

19.     Under the APA, this Court is authorized to "hold unlawful and set aside agency action, findings, and conclusions of law found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706 (2)(A).  Forest Service

final agency actions issued under NFMA and the WSRA are reviewed under the "arbitrary and

capricious" standard of the APA.  *E.g.*, *Bennett v. Spear*, 520 U.S. 154, 175 (1997).

### The Property Clause of the U.S. Constitution

20.     The Property Clause of the U.S. Constitution gives Congress the power to

"dispose of and make all needful Rules and Regulations respecting the Territory or other

Property belonging to the United States."  U.S. Const. art. IV, § 3, cl. 2.  This power is "without

limitation," *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (citing *United States v. San

Francisco*, 310 U.S. 16, 29 (1940)); and allows Congress to even regulate conduct on private

lands where necessary to protect federal property.  *Id.* at 538.

### National Forest Management Act

21.     NFMA, 16 U.S.C. § 1601 *et seq.*, is the primary federal statute guiding

management of the National Forests, and imposes the mandate that the National Forests be

managed for multiple uses, including outdoor recreation, watershed protection, wildlife and fish

resources, and wilderness.  NFMA requires all National Forests to prepare detailed land and

resource management plans (Forest Plans), and sets requirements for those plans.  16 U.S.C.

§1604.  All actions taken by the Forest Service, including issuance of permits, plans, or contracts

for the use of Forest Service land, must be consistent with Forest Plans.  *Id.* at § 1604(i); 36

C.F.R. § 219.8.

22.     Congress has given the Secretary of Agriculture authority to "prescribe such

regulations as he determines necessary and desirable to carry out the provisions of [NFMA]," 16

U.S.C. § 1613, and "[t]o make such rules and regulations as he deems necessary to prevent

trespasses and otherwise regulate the use and occupancy of property acquired by, or transferred to, the Secretary," including National Forest land.  7 U.S.C. § 1101(f).

23.     Among other requirements under NFMA, Forest Plans must be "based on …[p]reservation of important historic, cultural, and natural aspects of our national heritage" and "[p]rotection and preservation of the inherent right of freedom of American Indians to believe, express, and exercise their traditional religions."  36 C.F.R. 219.11 (b) (5), (6).

24.     To implement NFMA's requirements and those of its implementing regulations, in 1987 the Forest Service developed a Forest Plan for the Clearwater National Forest that contains standards and guidelines for the forest's administration.  Section E identifies several forest-wide standards "that are considered as minimum requirements that must be met."  Forest Plan at II-20-40 (emphasis added).  Among these standards is Cultural Resources which requires that the Forest Service

> [e]nsure[s] that Forest actions are not detrimental to the protection and preservation of Indian Tribes' religious and cultural sites and practices and treaty rights.

Forest Plan at II-23.

25.     The Clearwater National Forest Plan of 1987 (Forest Plan) further requires the Forest Service to manage the Clearwater/Lochsa Wild and Scenic River corridor to "[p]rovide developed and dispersed recreational opportunities in a rural or roaded natural-appearing setting as landownership patterns permit."  *Id*. at III-25.

### The Wild and Scenic Rivers Act

26.     Congress delegated additional authority over the federal lands to the Forest Service through the Wild and Scenic Rivers Act of 1968, 16 U.S.C. §§ 1271–87.

27.     As stated in Section 1(b) in the Wild and Scenic Rivers Act, Congress declared it

to be,

> the policy of the United States, that certain selected rivers of the Nation which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations.

16 U.S.C. § 1271(b).

28.     To implement this policy, the Wild and Scenic Rivers Act established a national

Wild and Scenic Rivers System, 16 U.S.C. §§ 1272 & 1273(a); and defined the criteria for

inclusion of rivers within the Wild and Scenic Rivers System as any "free-flowing stream and

the related adjacent land area" that possesses one or more of the "outstandingly remarkable

values" identified in Section 1(b).  16 U.S.C. § 1273(b).

29.     For these originally designated rivers, Section 3(b) of the Wild and Scenic Rivers

Act directed the Forest Service (as the "agency charged" with their administration) to "designate

detailed boundaries" for the rivers and their associated corridors within the Wild and Scenic

Rivers system, and provided that such boundaries "shall include an average of not more than 320

acres of land per mile measured from the ordinary high water mark on both sides of the river."

16 U.S.C. § 1274 (b).  Congress also directed that the agency determine which of the protections

available under the WSRA apply to these originally designated rivers.  *Id.*

30.     Implementing these statutory directives, the Forest Service determined that the

Middle Fork Clearwater and Lochsa Rivers should be designated as "recreational" rivers within

the Wild and Scenic Rivers System, identified the associated corridor, and published notice of

these determinations.  *See* Middle Fork Clearwater Wild and Scenic River:  Classification,

Boundaries, and Development Plan, 34 Fed. Reg. 15565 (Oct. 7, 1969).

31.     The Forest Service designated the Middle Fork Clearwater and Lochsa Rivers as "recreational" primarily because of the presence of U.S. Highway 12 within the river corridor. 34 Fed. Reg. at 15566.  The Act defines "recreational river areas" as possessing one or more of the outstandingly remarkable values identified in Section 1, and are "rivers or sections of rivers that are readily accessible by road or railroad, that may have some development on their shorelines, and that may have undergone some impoundment or diversion in this past,"  16 U.S.C. § 1272(b)(3).

32.     Section 10(a) of the Wild and Scenic Rivers Act requires agencies administering the Wild and Scenic Rivers System to protect and enhance their outstandingly remarkable values, as follows:

> Each component of the wild and scenic rivers system shall be administered in such manner as to protect and enhance the values which caused it to be included in said system without, insofar as is consistent therewith limiting other uses that do not substantially interfere with public use and enjoyment of these values.  In such administration primary emphasis shall be given to protecting its esthetic, scenic, historic, archaelogic, and scientific features.

33.     Similarly, Section 12(a) of the Wild and Scenic Rivers Act mandates, "the Secretary of Interior, the Secretary of Agriculture, and the head of any other federal department or agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic Rivers System . . . shall take such action respecting management policies, regulations, contracts, plans, affecting such rivers . . . as may be necessary to protect such rivers in accordance with the purposes of this Act."  16 U.S.C. § 1283(a)(emphasis added)

34.     The Forest Service has authority and jurisdiction to enforce all relevant legal authorities, including those listed above, within the right-of-way for U.S. Highway 12. *Idaho Rivers United v. U.S. Forest Serv.*, 11-cv-95-BLW, 2013 WL 474851(Feb. 7, 2013).  This

authority includes the ability to regulate the transport of "mega-loads" on U.S. Highway 12 through the Nez Perce-Clearwater National Forest and the Middle Fork Clearwater/Lochsa Wild and Scenic River Corridor.

## FACTUAL BACKGROUND

### U.S. Highway 12

35.     U.S. Highway 12 traverses the Nez Perce Reservation and the Tribe's aboriginal territory including what is now the Nez Perce-Clearwater National Forest.  U.S. Highway 12 is adjacent to, and at some places crosses, the Nez Perce National Historic Trail, which marks the historical route taken by the Nez Perce to hunting grounds in Western Montana.  U.S. Highway 12 serves as a primary route for Tribal transportation, commerce, safety, and as an access route for the exercise of treaty-reserved rights on National Forest and other public lands in Idaho and Montana.

36.     U.S. Highway 12 also traverses the Nez-Perce Clearwater National Forest, an area of 1.8 million acres of National Forest land in Idaho between the Palouse Prairie and the Bitterroot Mountains.  For many miles, U.S. Highway 12 parallels the Middle Fork Clearwater/Lochsa Wild and Scenic River, one of the first rivers to be designated as Wild and Scenic by Congress in 1968.  In fact, U.S. Highway 12 is actually located inside the boundaries of the Wild and Scenic River, as designated by the Forest Service.  *See* Management Guides Middle Fork of the Clearwater, Including the Lochsa and Selway, FS, 2-3, 155 (July 25, 1973) (Management Guides) ("The Lewis and Clark Highway, within the River Boundary, is an adequate facility for the present"); River Plan Middle Fork Clearwater Including the Lochsa and Selway of the National Wild and Scenic River System, FS, 2-5, 200–211 (showing U.S. Highway 12 running through the Recreation River boundary).

*COMPLAINT -11*

37.     The Middle Fork Clearwater/Lochsa Wild and Scenic River and its corridor are an unparalleled, national recreational resource.  Every spring, boaters travel from around the United States to test their mettle on the Lochsa's big water, expert-level rapids.  Depending on the season, anglers flock from throughout the Northwest to hook native trout, giant Chinook salmon, and steelhead.  In summer, visitors and locals alike enjoy swimming in the rivers and camping and hiking in the corridor.  Elk hunters arrive in fall, and winter sees hound hunters, snowshoers, and cross-country skiers.  The corridor's hot springs are an attraction year round.

### Creation of a High-and-Wide Corridor

38.     Since the fall of 2008, the oil industry and a specialized group of shipping companies have been working to convert U.S. Highway 12 into an industrial high-and-wide corridor that prioritizes the transport of "mega-loads" over other uses of the highway, in flagrant violation of the findings, determinations, and mandates of all applicable legal authorities.

39.     To the best of Plaintiffs' knowledge, this process began in 2008 when Exxon Mobil, acting through its subsidiary Imperial Oil (collectively, "Exxon-Imperial") decided to use U.S. Highway 12 to ship over 200 loads of industrial oil equipment to the Kearl Oil Sands Project in Fort McMurray, Alberta.  The Kearl proposed loads were larger and heavier than any load that had ever travelled on Highway 12 before.

40.     One reason for choosing this route was the potential to create a new "high load" corridor through Idaho and Montana on Highway 12.  In order to create this "high load corridor," Exxon Imperial modified U.S. Highway 12 and surrounded corridor in numerous ways between 2009 and 2011, including by raising utility lines, removing a gondola cable operated by the U.S. Geological survey, and drastically modifying much of the vegetation along U.S. Highway 12.

*COMPLAINT -12*

41.     All of these corridor modifications—utility line relocations, tree trimming, and gondola cable removal—have made the Wild and Scenic River/Scenic Byway an attractive route for other companies wishing to transport unusually large loads.  Five companies have sought and received permission from ITD to transport mega-loads on Highway 12, including Exxon-Imperial, through the transportation company Mammoet; ConocoPhillips, through a transportation company called Emert International; Weyerhauser, through the transportation company Nickel Bros; Selway Corps, which did its own shipping; and Ellet Industries, using the shipping company Omega Morgan.

### *Idaho Rivers United v. U.S. Forest Service*

42.     On August 11, 2010, IRU petitioned the Forest Service to grant relief from the transport of Exxon-Imperil and Conoco's mega-loads.

43.     On September 10, 2010, Clearwater National Forest Supervisor Rick Brazell responded to IRU's letter by sending a letter to ITD the Exxon-Imperial and Conoco mega-load proposals.  *See* Letter from R. Brazell, Clearwater National Forest Supervisor, to J. Carpenter, Idaho Transportation Department, District 2 Engineer (Sept. 10, 2010) (FS, 8-27, 200-201) (2010 Brazell letter).

44.     Although the 2010 Brazell letter conveyed numerous concerns about the use of U.S. Highway 12 to transport mega-loads, it nevertheless concluded that the Forest Service lacked jurisdiction to regulate mega-loads traveling on Highway 12, stating: "We both recognize the Forest Service's limited jurisdiction with regard to what travels the highway within the existing right of way, even across the National Forest."  *Id.* at 200.

45.     Based on the Forest Service's September 2010 letter declining to take action to regulate mega-loads on Highway 12, IRU brought suit in this court March 10, 2011.  IRU

challenged the Forest Service's determination that it lacked jurisdiction or authority to regulate the transport of mega-loads on U.S. Highway 12.

46.     This Court issued its decision in the case on February 7, 2013.  The Court found that an extensive line of authority set forth in IRU's briefing, "beginning with the Property Clause and proceeding through the Organic Act, the Federal-Aid Highways Act, the Wild and Scenic Rivers Act, and finally the Highway Easement's directive to protect the scenic and esthetic values of the river corridor – is focused on granting the federal defendants the authority to regulate the use of roads over federal land."  *IRU*, 2013 WL 474851.

47.     The Court also found that the Forest Service's determination that it lacks jurisdiction over the mega-loads has a "substantial adverse effect" on the interest of Idaho Rivers United, the Plaintiff in that case and co-Plaintiff in this case:

> "This agency stand-down [by the USFS] makes it likely that more mega-loads will be planned and approved…the lack of federal oversight may encourage Idaho to be less rigorous in its analysis and shippers to be more willing to send mega-loads down Highway 12.  The Forest Service itself feared that the ITD's approval "will ultimately lead to future additional proposals."

*Id.*

48.     The Court subsequently issued judgment, pronouncing, "the Forest Service has authority and jurisdiction to enforce all relevant legal authorities, including, but not limited to, the Wild and Scenic Rivers Act, the Forest Service Organic Act, the National Forest Management Act, and implementing regulations, policies, agreements, and MOUs, as identified above, with respect to mega-load shipments proposed or approved within the right-of-way for U.S. Highway 12 held by ITD."  *IRU*, WL 474851.

**The Forest Service's Mega-load Directives**

49.     On June 17, 2013, the U.S. Forest Service communicated to the Idaho

Transportation Department that "since Judge Wynmill's [sic] ruling we have not had to address

proposals for transport of what has been deemed by the media as a 'megaload'," but that the

Forest Service had understood that "it is important to identify criteria for oversized loads that

would require additional review."  The Forest Service—noting its receipt of a Traffic Control

Plan from Omega Morgan provided to it by ITD—identified the criteria the Forest Service will

use to determine which oversized loads require additional Forest Service review:

1.  Require traffic to be fully stopped (either on or adjacent to the highway) to allow
    passage of the oversized load, or
2.  Require longer than 12 hours to travel through the Wild and Scenic River Corridor
    and National Forest (MP 74 to 174), or
3.  Require physical modification of the roadway or adjacent vegetation to facilitate
    passage beyond normal highway maintenance.

50.     The Forest Service asserted that the proposed Traffic Control Plan "triggers all of

these criteria", stating:

> Transport of such loads may impact visitor and traveler experiences and affect cultural
> and intrinsic values associated with the corridor.  How these values are affected by
> oversized loads is difficult to define.  Until we have a clear understanding of these
> potential impacts, I cannot support authorization of such oversized loads through the
> National Forest or within the Wild and Scenic River corridor.

The Forest Service noted its desire to work with the Federal Highway Administration and the

Nez Perce Tribe "to define the physical and intrinsic values associated with the Highway 12

corridor that may be affected by oversized loads", and went on to state:

> Clearly defining the intrinsic values is most difficult and where we need to gather the
> most information.  We believe that can be accomplished using social science
> methodologies and look forward to discussing that opportunity and timelines with you.
> Until such an assessment can be completed, and its findings incorporated into an MOU or
> other agreement between ITD and the Forest Service, I cannot agree to the current ad hoc
> process of authorizing such use.  Any proposals meeting the interim criteria will require
> formal consultation with the Nez Perce Tribe which may take substantial time.

The Forest Service concluded by emphasizing that:

> [T]he U.S. District Court has ruled that my agency has full authority to protect the Wild and Scenic corridor and its values notwithstanding the States [sic] easement for U.S. 12.

51.     On June 27, 2013, the Nez Perce Tribe expressed its support for the Forest Service's letter informing ITD that the Forest Service could not authorize Omega Morgan's proposal to transport mega-loads on U.S. Highway 12 through the National Forest or within the Wild and Scenic River Corridor without the Forest Service first performing—in consultation with the Nez Perce Tribe, Federal Highway Administration, and State of Idaho—a full evaluation of the impacts of these oversized loads on the cultural and intrinsic values associated with the corridor.  The Tribe noted that the interim criteria for evaluation of mega-loads on U.S. Highway 12 are "an appropriate starting point" but as the Forest Service acknowledged "do not address the cultural and intrinsic values of the highway corridor that are important to the Tribe." Accordingly, the Tribe stated, "the Forest Service's determination not to authorize the Omega Morgan mega-loads on U.S. Highway 12 constitutes an appropriate and timely exercise of the Forest Service's authority."

52.     One month after the Forest Service's letter to ITD, in a letter dated July 18, 2013 from ITD to the Forest Service, ITD outlined its current permitting process as it relates to overlegal loads on U.S. Highway 12 in an effort "to further develop and refine" the Forest Service's criteria.

53.     On July 24, 2013, ITD requested that the Forest Service reconsider the criteria regarding the stopping of traffic.

54.     On or around July 22, 2013, Oregon-based hauler Omega Morgan offloaded two cylindrical vessels weighing approximately 644,000 pounds and measuring 255 feet long, 23 feet high, and 21 feet long at the Port of Wilma along the Snake River in the State of Washington.

55.     On July 26, 2013, the Forest Service responded to ITD that it had developed Interim Criteria #1 to answer the question "How big is a megaload" and had used the effect to traffic as a proxy for size and was intended to address the physical presence of an oversized load in the corridor.  Consequently, the Forest Service agreed to replace Interim Criteria #1 and replace it by adopting ITD's standard, such that Criteria #1 would be "loads greater than 16 feet wide or 150 feet also trigger additional review by the Forest Service."

56.     The Forest Service "reiterate[d] that the Forest Service does not support ITD permitting oversized loads meeting the interim criteria until the impacts of that use on the corridor values is better understood."  The Forest Service noted that this is "challenging given the magnitude of congressionally designated areas converging in the corridor" that include:

- The Middle Fork of the Clearwater Wild and Scenic River system, including 64 miles of the Lochsa River and 24 miles of the Middle Fork Clearwater River, designated by Congress in the 1968 Wild and Scenic Rivers Act.  The Outstandingly Remarkable Values potentially affected include Scenery, Recreation, Fisheries, Wildlife, Botany, Water Quality, History, and Cultural.

- The Selway-Bitterroot Wilderness designated by Congress in the 1964 Wilderness Act.  Values potentially affected include Solitude and Naturalness.

- The Lolo Trail, designated a National Historic Landmark (1962) and listed on the National Register of Historic Places (1993); portions of the Lewis and Clark National Historic Trail designated by Congress in 1978; and the Nez Perce National Historic Trail, designated by Congress in 1986.  The values here are Historical, Cultural, and Spiritual as well as the emotional connection the Nez Perce people have with the events associated with the trails.

- The Northwest Passage National Scenic Byway (2002) and All-American Road (2005), from Lewiston to Lolo Pass.  Highway 12 is one of Idaho's oldest state scenic byways, designated in 1989.  The All American Road designation was based primarily on its outstanding cultural and historic qualities of national significance.

*COMPLAINT -17*

- Nez Perce and Salish Indian ceded lands with reserved treaty rights under the Nez Perce Treaty of 1855 and the Treaty of Hell Gate, 1855.  The U.S. has government-to-government and trust responsibilities to the tribes, including protection of and access to reserved treaty-right [sic] resources.

- Over 52 cultural resource sites identified under the National Historic Preservation Act, including Nez Perce and Salish religious and cultural sites significant to the tribes.  Two sites, Powell and Lochsa Historic Ranger Stations, are listed on the National Register of Historic Places.

57.     The Forest Service then emphasized that "[t]he State's current position that permits will be issued regardless of the potential for such impacts seems to be in direct conflict with the Federal Court Ruling . . . .  The Federal Court Ruling made that clear by confirming the Forest Service's role in reviewing permits in light of all laws governing National Forest Lands and the physical and intrinsic values associated with these lands."

58.     The Forest Service further advised ITD that Omega Morgan's traffic control plan does little to abate the concerns outlined in the Forest Service's June 17, 2013 letter or the revised criteria suggested above, noting that "the proposal involves a load that exceeds 16 feet wide and 150 feet long (revised Criteria 1) and would take 2 nights to traverse the highway between MP 74 and 174 (Criteria 2)."

59.     The Forest Service emphasized that "We again request that ITD not permit these loads until we complete a corridor study examining such uses and their potential impacts to the intrinsic values of the corridor.  And then only if the corridor study and consultation with the Nez Perce Tribe indicates such uses can be compatible with the other uses and values of the corridor."

60.     The Forest Service also noted that ITD had indicated that it "may issue the permits and then send the shipper to the Forest Service to obtain permission" and responded that "You [ITD] are aware the Forest Service has no mechanism to issue a permit for such uses and

*COMPLAINT -18*

the concept is disingenuous to the Federal Court Ruling putting the Forest Service in a review

role, not a permitting one." The Forest Service summarized that "The State is responsible for

permitting and the Forest Service is responsible for reviewing prior to the State issuing permits."

61.     The Forest Service noted: "We are having on-going discussions with the Nez

Perce Tribe and have a meeting scheduled with them August 20 to discuss the proposed interim

criteria, what may be involved with additional Forest Service review and to begin conversations

regarding sideboards for the proposed corridor study. These are challenging discussions which

will take time and we have no timeline for completing a corridor study but are seeking funding

opportunities and evaluating internal capacity to complete such a study."

62.     On Friday, August 2, 2013, ITD provided a copy of a permit for an overlegal load

provided that same day to Omega Morgan. The permit states: "Please be advised that pursuant

to an order of Federal Judge Lynn Winmill, the United States Forest Service and Federal

Highway Administration also have jurisdiction to review overlegal permits issued for travel on

Highway 12. A copy of the attached permit has been forwarded to these Federal Agencies to

allow them an opportunity to review."

63.     The next morning, the Lewiston Morning Tribune quoted the Forest Supervisor as

saying: "We don't have the authority to stop the megaloads. You read the court ruling and it says

we have the authority to review the state permits. We have reviewed them and made our interim

criteria."

64.     On August 5, 2013, the Chairman of the Nez Perce Tribe spoke with Forest

Service Chief, Tom Tidwell, by phone and petitioned him to enforce the Forest Service's

directives and stop the mega-load from entering the Nez Perce-Clearwater National Forest. The

Chief denied this request on the ground that, although the Forest Service has jurisdictional

authority to review mega-load permits, it lacks authority to enforce relevant federal authorities against the transport of a mega-load.

65.     On Monday, August 5, 2013, the Forest Service acknowledged its receipt of the ITD's August 2 permit issued to Omega Morgan to transport an over legal-sized load over U.S. Highway 12 on August 5 through August 9, as well as a letter from Omega Morgan indicating that they plan to proceed on August 5.

66.     The Forest Service states that it is "disappointed that ITD would proceed with issuing a permit given the constructive communication we have been having regarding interim criteria, consultation with the Nez Perce Tribe, and initiation of a corridor study."  The Forest Service then stated that "the Omega Morgan load triggers two of the three criteria and more time is needed to conduct our review.  The Forest Service emphasizes that the February 7, 2013 Federal Court decision "clearly gave the Forest Service authority to review ITDs permits for mega-loads and we have informed you that we are still in the process of reviewing.  At this time, the Forest Service does not consent, approve or otherwise authorize over legal loads meeting the interim criteria on US Highway 12 between MP 74 and 174."

67.     The Forest Service's August 5, 2013 letter to Omega Morgan emphasized this conclusion: "The Forest Service does not consent, approve or otherwise authorize Omega Morgan to transport the subject over legal loads on US Highway 12 between MP 74 and 174."  The Forest Service expressed frustration with Omega Morgan's "surmise[e] that less than one (1) business day would be adequate for our review", noting that Forest Service review should be conducted prior to ITD issuing a permit for any over legal load to avoid putting transporters in this awkward position.  That said, our interim criteria indicates additional review is required and the Forest Service does not consent, approve or otherwise authorize Omega Morgan to transport

the subject over legal loads on US Highway 12 between MP 74 and 174.  It also stated: that "I understand your company transported a similar over legal load on Idaho State Highway 20 recently" and that at a May 15, 2013 meeting Omega had indicated a route analysis of potential routes to Canada had been completed."

68.     In an emergency session on Sunday, August 4, the Nez Perce Tribal Executive Committee, the governing body of the Nez Perce Tribe, passed a resolution opposing the transport of the mega-load through the Reservation and Nez Perce-Clearwater National Forest.

69.     On August 5, 2013, Omega Morgan began transporting the over-legal load from the Port of Wilma on U.S. Highway 12/95.  As a consequence of public demonstrations, involving both non-Indians and members of the Nez Perce Tribe, in the vicinity of the Nez Perce Tribe's Clearwater River Casino, transport ended that day on Highway 12/95, before the junction with U.S. Highway 95 South.

70.     On the morning of August 8, 2013, the mega-load crossed into the Clearwater National Forest and the Wild and Scenic River Corridor.  Prior to that time, the Nez Perce Tribe and IRU had fully expected the Forest Service to take action consistent with its repeatedly stated determination that "the Forest Service does not consent, approve or otherwise authorize Omega Morgan to transport the subject over legal loads on US Highway 12 between MP 74 and 174."

71.     It is thus now evident that the Forest Service is following a "stand down" approach and is refusing to take any enforcement actions with respect to this over-legal load based on the Forest Service's position that it lacks enforcement authority over the mega-load.

72.     A second mega-load is parked at the Port of Wilma.  On information and belief, ITD intends to issue an overlegal permit for this load to travel on U.S. Highway 12 in the imminent future.

73.     Immediate declaratory and injunctive relief is necessary to prevent the mega-load from entering the Nez Perce-Clearwater National Forest where it poses imminent and irreparable harm to Plaintiffs' rights and interests in the National Forest.

**FIRST CLAIM FOR RELIEF:**
**THE FOREST SERVICE IMPROPERLY**
**DETERMINED THAT IT HAS NO ENFORCEMENT AUTHORITY**
**OVER TRANSPORT OF MEGA-LOADS ON U.S. HIGHWAY 12**

74.     Plaintiffs reallege and incorporate by reference the preceding paragraphs.

75.     This First Claim for Relief challenges the Forest Service's final decision denying the Tribe's petition that the Forest Service exercise its authority by taking enforcement action to regulate mega-loads into and/or through the Nez Perce-Clearwater National Forest on U.S. Highway 12.  This claim is brought pursuant to the judicial review provisions of the APA.  5 U.S.C. 706(2).

76.     As noted above, the Tribe petitioned the Forest Service for relief from transport of mega-loads by Omega Morgan on August 5, 2013.  The Forest Service denied this request, and the first of Omega Morgan's mega-loads entered the Nez Perce-Clearwater National Forest and the Wild and Scenic River Corridor on the morning of August 8, 2013.

77.     The Forest Service denied the Tribe's petition on the grounds that the agency lacks authority to enforce its directives regulating the transport of mega-loads on U.S. Highway 12.

78.     Contrary to the Forest Service's determination that it lacks authority to enforce its mega-load directives, this Court has expressly held that the Forest Service has authority and jurisdiction to enforce all relevant legal authorities, including, but not limited to, the Wild and Scenic Rivers Act, the Forest Service Organic Act, the National Forest Management Act, and implementing regulations, policies, agreements, and MOUs, as identified above, with respect to

*COMPLAINT -22*

mega-load shipments proposed or approved within the right-of-way for U.S. Highway 12 held by ITD.

79. Since this Court's holding, as noted, the Forest Service has begun to exercise its regulatory authority over mega-loads on U.S. Highway 12 by establishing interim criteria prohibiting access to defined mega-loads. The Forest Service has also determined that any mega-loads that meet any of the interim criteria will trigger further Forest Service review, including requiring a corridor impacts study and consultation with the Nez Perce Tribe.

80. The Forest Service's denial of authority to enforce its decision prohibiting transport of Omega Morgan's mega-load on U.S. Highway 12 traversing the Nez Perce-Clearwater National Forest is arbitrary, capricious, an abuse of discretion, and not in accordance with law, as set forth in this Court's decision in *Idaho Rivers United v. U.S. Forest Service,* 11-cv-95-BLW (Feb. 7, 2013), under the APA, which has caused or threatens serious and irreparable injury to Plaintiffs' rights and interests.

## SECOND CLAIM FOR RELIEF:
## VIOLATION OF THE NATIONAL FOREST MANAGEMENT ACT

81. The Nez Perce Tribe realleges and incorporates by reference the preceding paragraphs.

82. This Second Claim for Relief challenges the Forest Service's violation of the National Forest Management Act, 16 U.S.C. § 1601 *et seq.*, and NFMA's implementing regulations by failing to ensure that transport of Omega Morgan's megaload would not be detrimental to the protection and preservation of the Tribe's religious and cultural sites and practices and treaty rights, in violation of the Clearwater National Forest Plan. This claim is brought pursuant to the judicial review provisions of the APA, 5 U.S.C. § 706(2).

*COMPLAINT -23*

83.     Under NFMA, the Forest Service must develop and regularly revise Forest Plans for each National Forest. 16 U.S.C. §§ 1604(a), (e) & (g)(3)(B).  Once a forest plan has been developed, all subsequent agency actions, including site-specific management activities, must be consistent with the governing forest plan.  16 U.S.C. § 1604(i).

84.     As noted above, the Clearwater National Forest Plan requires the agency to "ensure that Forest actions are not detrimental to the protection and preservation of Indian Tribes' religious and cultural sites and practices and treaty rights."

85.     The Forest Service determined that consultation with the Nez Perce Tribe about the impacts of mega-loads is necessary to ensure protection and preservation of the Tribe's religious and cultural sites and practices and treaty rights.

86.     The scheduled government-to-government consultation did not occur before Omega Morgan proceeded to move the load on U.S. Highway 12 on Monday, August 5 in violation of the Forest Service's decision.

87.     Although the Tribe appealed to the Forest Service to take enforcement action against Omega Morgan and prohibit the entry of Omega Morgan's first mega-load on the National Forest, the agency denied the Tribe's request on the ground that it lacked enforcement authority to stop the mega-load.

88.     This violation of NFMA and implementing regulations is arbitrary, capricious, and abuse of discretion, not in accordance with law under the APA, and has caused or will continue to cause irreparable harm to Plaintiff Nez Perce Tribe's rights and interests.

**THIRD CLAIM FOR RELIEF:**
**VIOLATION OF THE WILD AND SCENIC RIVERS ACT**

89.     Plaintiffs reallege and incorporate by reference the preceding paragraphs.

90.     This Third Claim for Relief challenges the Forest Service's violation of the Wild and Scenic Rivers Act, 16 U.S.C. § 16 U.S.C. §§ 1271-1287, by refusing to enforce relevant legal authorities against Omega Morgan in order to protect the outstandingly remarkable scenic and recreational values of the Middle Fork Clearwater/Lochsa Wild and Scenic River corridor. This claim is brought pursuant to the judicial review provisions of the APA, 5 U.S.C. § 706(2).

91.     Under the Wild and Scenic Rivers Act, as noted above, the Forest Service has a mandatory duty to administer designated Wild and Scenic Rivers "in such manner as to protect and enhance the values which caused it to be included in said system" and give primary emphasis to "protecting its aesthetic, scenic, historic, archeologic, and scientific features."  16 U.S.C. § 1281(a).  The Act also imposes the mandatory duty that the Forest Service "shall take such action respecting management policies, regulations, contracts, plans, affecting such rivers . . . as may be necessary to protect such rivers in accordance with the purposes of this Act."  16 U.S.C. § 1283(a).

92.     The Forest Service has violated these duties by refusing to enforce the requirements of the applicable legal authorities discussed above, despite the fact that the transport of mega-loads through the Wild and Scenic River corridors degrades the scenic and recreational values of the river and the corridor.

93.     Under the APA, the Defendant's denial of the Tribe's petition for relief and refusal to enforce the mandates of the Wild and Scenic Rivers Act and the other provisions and requirements of law constitute final agency action over which this Court may exercise judicial review and compel performance by the Forest Service that are arbitrary, capricious, an abuse of discretion, and contrary to law, for which judicial review and reversal is required under the APA. 5 U.S.C. § 706(a)(2).  *See also Idaho Rivers United,* 11-cv-95-BLW, Docket No. 32 at 9.

94.     Moreover, entry of declaratory relief is appropriate pursuant to the Declaratory Judgment Act, as there is currently a live and justiciable controversy between Plaintiff and Defendant over the legal mandates and duties applicable to the Forest Service's ongoing management of the public lands and resources within the Highway 12 corridor, for which entry of declaratory relief is necessary in order to preserve and protect the federal lands and resources and public interest.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray that the Court grant the following relief:

A.     Issue immediate injunctive relief, including temporary restraining order(s) and/or preliminary injunction(s), ordering the Forest Service to enforce its already established jurisdictional authority over the use of U.S. Highway 12 within the Nez Perce-Clearwater National Forest and Wild and Scenic River corridor by prohibiting the movement of all criteria-defined mega-loads until such time as the Forest Service has completed a permit review, corridor impacts study, and consultation with the Nez Perce Tribe;

B.     Adjudge and declare that the Forest Service acted unlawfully in determining that it lacks authority to enforce its directives regarding the transport of mega-loads through the Nez Perce-Clearwater National Forest on U.S. Highway 12;

C.     Issue declaratory relief holding that the Forest Service's determination that it lacks authority to enforce its decision prohibiting the transport of Omega Morgan's mega-load on U.S. Highway 12 over the Nez Perce-Clearwater National Forest, violates NFMA and the WSRA, and is arbitrary, capricious, and abuse of discretion, and/or contrary to law;

D.      Award Plaintiff IRU its reasonable costs, litigation expenses, and attorney's fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and/or all other applicable authorities; and/or

E.      Grant such further relief as the Court deems just and proper in order to provide Plaintiffs with relief and protect the public interest.

DATED this 8th day of August, 2013.          Respectfully submitted,


/s/_____
MICHAEL A. LOPEZ, ISB# 8356
DAVID J. CUMMINGS, ISB# 5400
Attorneys for Plaintiff, Nez Perce Tribe


/s/_____
BRYAN HURLBUTT, ISB# 8501
NATALIE HAVLINA, ISB# 7498
Attorneys for Plaintiff, Idaho Rivers United

*COMPLAINT -27*