UNITED STATES DISTRICT COURT

IN THE DISTRICT OF IDAHO

| | |
|---|---|
| NEZ PERCE TRIBE and<br>IDAHO RIVERS UNITED<br><br>          Plaintiffs,<br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>          Defendant.<br>And<br><br>RESOURCES CONSERVATION<br>COMPANY INTERNATIONAL,<br><br>          Defendant-Intervenor | Case No. 3:13-CV-348-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it motions to reconsider filed by the Forest Service and RCCI. The motions were briefed on an expedited schedule and are now at issue. For the reasons explained below, the Court will deny both motions.

## ANALYSIS

Many of the arguments raised by RCCI and the Forest Service were raised in prior briefing and resolved in the Court's prior decision, and the Court can find no reason to reconsider those rulings. Other arguments were not directly raised, and the Court will address those.

**Memorandum Decision & Order – page 1**

RCCI complains about the Court's holding that the Forest Service's refusal to stop the mega-loads, communicated in a telephone conversation between Forest Service Chief Tidwell and Tribal Chairman Whitman, constitutes final agency action reviewable under the APA. The Court's holding, RCCI argues, allows "[a]ny party aggrieved by an agency[] . . . [to] obtain immediate judicial review by picking up the phone to fabricate a final agency action – or even by sending an email, voicemail, or text message." *See RCCI Brief (Dkt. No. 47-1)* at p. 7.

The Court's holding, however, does not apply to "any party" as argued by RCCI; rather, it is tied to the specific facts of this case and will not release a flood of APA litigation. As discussed in the prior decision, the Forest Service has a specific duty to the Tribe – under NFMA and the Forest Plans – to consult with the Tribe before these mega-loads proceed. An emergency arose when the Forest Service decided to allow the mega-loads to proceed without consulting the Tribe and without conducting the corridor study. Under the threat of this emergency, the Tribal Chairman telephoned the Chief of the Forest Service to demand that the Forest Service carry out its duty. By holding that the Forest Service Chief's denial was final agency action, the Court is not holding that any party can conjure up "final agency action" with a mere telephone call or text – this is a unique case limited to its facts, as set forth above.

RCCI argues that the response of the Forest Service Chief did not constitute the "last word" of the agency – to render it "final agency action" – because the Forest Service was still in the process of conducting the corridor study and consulting with the Tribe. But the Forest Service Chief's denial did constitute the "last word" of the agency on the

**Memorandum Decision & Order – page 2**

crucial question of whether the agency would consult with the Tribe *before* the mega-loads passed over Highway 12.

RCCI argues that the Court erred in relying on 36 C.F.R. § 261.50, and its associated regulations, as authority for the Forest Service to close Highway 12 because the regulation had not been cited in plaintiffs' complaint or briefing and was mentioned for the first time at oral argument. However, the Court can find no indication that plaintiffs ambushed the Forest Service by citing to the agency's own regulations for the first time at oral argument. The briefing and argument were conducted on an expedited basis, and, in any event, the Forest Service and RCCI have been given an opportunity to respond to the issue in this motion to reconsider.

Turning to the substance of the regulations, RCCI and the Forest Service argue that they provide no authority for closing Highway 12. The Court disagrees. Section 261.50(a) gives the Forest Service authority to "close or restrict the use of described areas within the area over which he has jurisdiction." The Court's prior decision held that the Forest Service had jurisdiction over Highway 12 between mileposts 74 and 174, and it was that segment that the Court ordered closed.

The Forest Service points out that § 261.50(a) limits the Forest Service to those prohibitions "authorized in this subpart or any portion thereof," and that the only applicable subpart allows closure of "National Forest System Roads," a category that does not include Highway 12. However, the Forest Service's authority is not so limited. Other provisions "in this subpart" include closures authorized to stop "entering or being on lands or waters within the boundaries of a component of the National Wild and Scenic

**Memorandum Decision & Order – page 3**

Rivers System." *See 36 C.F.R. § 261.58(z)*.  Another subpart gives the Forest Service authority to close "any area" to protect (1) "special biological communities," (2) "objects or areas of historical . . . [or] geological . . . interest," and (3) "the privacy of tribal activities for traditional and cultural purposes." *See 36 C.F.R. § 261.53(b)(c) & (g)*.  These provisions are not limited to "National Forest System Roads."  The Court reaffirms its earlier holding that the regulations give the Forest Service authority to close Highway 12 between mileposts 74 and 174.

The Forest Service cites *Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006) for its holding that the Government had no trust obligation "to take action beyond complying with generally applicable statutes and regulations." *Id*. at 810.  That case is inapplicable, however, because here there is a specific duty under NFMA and the Forest Plans to consult with the Tribe, a situation that was not present in *Gros Ventre Tribe.*

RCCI argues that the Court's estimate of the economic loss of $5 million was far below the $85 million that they will actually suffer from the delay.  The $5 million figure represented the additional transportation costs RCCI stated that it would incur if the mega-loads could not pass over Highway 12.  *See Hein Declaration (Dkt. No. 21-2)* at ¶ 21; *Hein Declaration (Dkt. No. 47-2)* at ¶ 16.  The $85 million figure represented the loss of revenue to RCCI if customers terminated the contracts for delay. *Id*.  While RCCI will likely incur the $5 million figure to reroute the mega-loads, spending that money may protect RCCI from paying the $85 million, a more speculative sum.  Moreover, the equities tip against RCCI here because both sums are largely the result of the gamble RCCI took that they could proceed down Highway 12, as fully discussed in

**Memorandum Decision & Order – page 4**

the Court's prior decision. RCCI counters that it took no gamble because it entered into commitments to move the mega-loads along Highway 12 well before it knew that anyone objected. *See Hein Declaration (Dkt. No. 47-2)* at ¶ 10. According to RCCI, it engaged in its transportation analysis between August 2011 and January 2012, and concluded that Highway 12 was feasible. *Id*. But the original litigation – highly publicized – was filed in March of 2011. *See IRU v Forest Service 1:11-CV-95-BLW*. It was clear at that time the route was contested. The Court therefore discounts RCCI's allegations that it was blindsided by the opposition.

RCCI seeks to stay the injunction pending appeal. *See Reply Brief (Dkt. No. 56)* at p. 9. In order to stay an injunction, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir.2012). The party requesting the stay bears the burden to show that a stay is warranted, and the first two factors are the most critical. *Id.* at 1204. The Court cannot find that RCCI has made a strong showing that it will prevail on appeal. Moreover, any likely damages are monetary in nature and not irreparable. Perhaps most importantly, staying the injunction will cause the very harm plaintiffs complain about in this lawsuit, harm the Court has found would be irreparable.

Finally, the Court finds that no injunction bond will be imposed in this case. *See Landwatch v. Connaughton*, 905 F.Supp.2d 1192, 1198 (D.Or. 2012) (holding that

**Memorandum Decision & Order – page 5**

"[f]ederal courts have consistently waived the bond requirement in public interest environmental litigation, or required only a nominal bond").

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the expedited motion for reconsideration (docket no. 47) and the Government's motion for reconsideration (docket no. 50) are DENIED.

DATED: October 10, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court

Memorandum Decision & Order – page 6